AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

### for the
### Southern District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) Case No. |
| One Samsung GT-I9000T cellular phone IMEI #352622040279445 | ) ) ) |

FILED

MAR 26 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

**19MJ1242**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960 | Importation of Methamphetamine and Cocaine |

The application is based on these facts:

See attached Affidavit of Special Agent Matthew Dempsey, Homeland Security Investigations

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

S.A. Matthew Dempsey, Homeland Security Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  **3 / 2 6 / 1 9**

_____
*Judge's signature*

City and state:  San Diego, CA

Hon. Bernard G. Skomal, United States Magistrate Judge
*Printed name and title*

# **ATTACHMENT A**

## PROPERTY TO BE SEARCHED

The following property is to be searched:

> Samsung GT-I9000T Cellular phone
> IMEI: 352622040279445
> (**Target Device**);

The **Target Device** is currently in the possession of the Homeland Security Investigations, 2255 Niels Bohr Ct, San Diego, California 92514.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of September 1, 2018 to January 15, 2019:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to import controlled substances from Mexico to the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in smuggling-controlled substances from Mexico to the United States;

d. tending to identify travel to or presence at locations involved in the smuggling of controlled substances from Mexico to the United States, such as, but not limited to, stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject phone; or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

which are evidence of violations of Title 21, United States Code, Sections 952 and 960.



# AFFIDAVIT IN SUPPORT OF WARRANT

I, Matthew Dempsey, being duly sworn, hereby state as follows:

## INTRODUCTION

1.      This affidavit supports an application for warrant to search the following electronic device (**Target Device**): Samsung GT-I9000T cellular phone, black in color, IMEI #352622040279445, as described in Attachment A (incorporated herein by reference), and seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952 and 960.

2.      The **Target Device** was seized from Jesus Enrique Rivera ("Defendant") incident to his arrest for violation of Title 21, United States Code, Sections 952 and 960, Importation of Methamphetamine and Cocaine, at the Otay Mesa, California Port of Entry on January 15, 2019. The **Target Device** is currently in the possession of the Homeland Security Investigations, 2255 Niels Bohr Ct, San Diego, California 92154.

3.      Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B (incorporated herein by reference.)

4.      The information contained in this affidavit is based upon my experience and training, consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause. Dates, times and amounts are approximate.

//
//
//
//

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## EXPERIENCE AND TRAINING

5.      I am a Special Agent (SA) with Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), and have been employed by HSI since August 2016. I am currently assigned to the Deputy Special Agent in Charge (DSAC), San Ysidro Office, Contraband Smuggling Group IV, and my duties include investigating the trafficking of illicit controlled substances and the importation and distribution of illegal substances. I am cross-designated by the United States Drug Enforcement Administration to conduct narcotics investigations and enforce the provisions of the Controlled Substance Act. I have completed training at the Federal Law Enforcement Training Center, comprising basic criminal investigator training and HSI Special Agent Training. I have received training in identifying various controlled substances and conducting Title 21 controlled substances investigations.

6.      In the course of my duties at HSI, I have worked as the case agent, directing specific drug-related investigations. I have also worked as a surveillance agent, where I observed and recorded movements of individuals trafficking in drugs and of those suspected of trafficking in drugs. Additionally, I have participated in the execution of search warrants. I have initiated and executed numerous arrests for drug-related offenses, including possession with the intent to distribute and the importation of controlled substances. I have interviewed defendants, witnesses, and informants relative to the illegal trafficking of controlled substances. Through these experiences, I have gained a working knowledge and insight into the operational habits of narcotics smugglers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico through the San Diego international ports of entry. I have completed Basic Mobile Forensics, Cellebrite UFED4PC, and Physical Analyzer Training course, designed to familiarize investigators with methods of extracting and analyzing cellular phone data.

7.      From February 2008 until August 2016, I was a Border Patrol Agent employed by the United States Border Patrol, which is a component of Customs and Border Protection (CBP), under the Department of Homeland Security. As a Border Patrol Agent,

1 I was assigned to El Centro Station, in Imperial, California, where I participated in
2 investigations into suspected drug smuggling, questioned suspects and witnesses, and
3 conducted vehicle searches related to suspected drug smuggling.

4     8.    Based upon my training and experience as a Special Agent, and consultations
5 with law enforcement officers experienced in narcotics smuggling investigations, and all
6 the facts and opinions set forth in this affidavit, I submit the following:

7
8           a.    Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

9
10
11           b.    Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

12
13
14           c.    Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

15
16           d.    Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

17
18
19           e.    Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of Border Patrol checkpoints.

20
21
22           f.    Drug smugglers therefore generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messaging, and phone numbers of co-conspirators.

23     9.    Based on my training and experience, including consultations with other law
24 enforcement personnel, I know that drug traffickers commonly use electronic devices such
25 as cellular telephones to store names, telephone numbers, records, drug ledgers, and other
26 information pertaining to drug trafficking activity. I know that cellular/mobile telephones
27 can and often do contain electronic records, phone logs and contacts, voice and text
28 communications, and data such as emails, text messages, chats and chat logs from various

3

1  third-party applications, photographs, audio files, videos, and location data. This
2  information can be stored within disks, memory cards, deleted data, remnant data, slack
3  space, and temporary or permanent files contained on or in the cellular/mobile telephone.
4  Specifically, I know based upon my training, education, and experience investigating
5  narcotics conspiracies that searches of cellular/mobile telephones yields evidence:

6        a.    tending to indicate efforts to import controlled substances from Mexico into the United States;

7

8        b.    tending to identify other facilities, storage devices, or services—such
9  as email addresses, IP addresses, phone numbers—that may contain
10  electronic evidence tending to indicate efforts to import controlled substances from Mexico to the United States;

11        c.    tending to identify co-conspirators, criminal associates, or others
12  involved in smuggling-controlled substances from Mexico to the United States;

13

14        d.    tending to identify travel to or presence at locations involved in the
15  smuggling of controlled substances from Mexico to the United States, such as, but not limited to, stash houses, load houses, or delivery points;

16        e.    tending to identify the user of, or persons with control over or access
17  to, the subject phone; or

18        f.    tending to place in context, identify the creator or recipient of, or
19  establish the time of creation or receipt of communications, records, or
20  data above.

21      10.   Based upon my training and experience, I am familiar with the ways in which
22  drug traffickers conduct their business, including the various means and methods by which
23  drug traffickers import and distribute drugs; use cellular telephones, emails, and text
24  messages to facilitate drug activity. I am also familiar with the ways in which drug traffickers
25  conceal, convert, transmit, and transport their drug proceeds, including, without limitation,
26  the use of couriers to transport currency and proceeds, the use of third parties and nominees
27  to purchase or to hold title to assets, the use of multiple vehicles as conveyances for drugs
28  and drug proceeds, and the installation of false/hidden compartments ("traps") in those
vehicles to covertly transport drugs and drug proceeds.

4

1     11.    I also know from training and experience that drug traffickers periodically
2  change or "drop" their telephones and/or telephone numbers in an attempt to avoid law
3  enforcement interception of their conversations. Moreover, it is my experience that narcotics
4  distributors purposefully use multiple communication devices (for example, cellular
5  telephones) to keep law enforcement from understanding the full scope of their own and/or
6  their organization's illicit conduct, in the event that their communications are being
7  intercepted. I also know that drug traffickers frequently use text messaging to communicate
8  with other traffickers in an effort to thwart law enforcement interception of communications.

9     12.    Through the course of my training, investigations, and conversations with other
10  law enforcement personnel, I am aware that it is a common practice for narcotics smugglers
11  to work in concert with other individuals and to do so by utilizing cellular telephones, pagers
12  and portable radios to maintain communications with co-conspirators in order to further their
13  criminal activities. This is particularly true in cases involving distributional quantities of hard
14  narcotics, such as methamphetamine and cocaine. Typically, couriers smuggling controlled
15  substances across the border are in telephonic contact with co-conspirators immediately prior
16  to and following the crossing of the load vehicle, at which time they receive instructions on
17  how to cross and where and when to deliver the controlled substance. Narcotics smugglers
18  and their organizations use cellular and digital telephones, in part, because these individuals
19  believe law enforcement is unable to track the originating and destination phone numbers of
20  calls placed to and from cellular and digital telephones.

21     13.    Subscriber Identity Module (SIM) Cards also known as subscriber identity
22  modules are smart cards that store data for GSM cellular telephone subscribers. Such data
23  includes user identity, location and phone number, network authorization data, personal
24  security keys, contact lists and stored text messages. Much of the evidence generated by a
25  smuggler's use of a cellular telephone would likely be stored on any SIM Card that has
26  been utilized in connection with that telephone.

27  //

28  //

## FACTS SUPPORTING PROBABLE CAUSE

14.    On January 15, 2019, at approximately 7:26 p.m., Defendant, a Mexican citizen and Legal Permanent Resident in the United States, applied for admission to the United States at the Otay Mesa, California Port of Entry. Defendant was the driver and sole occupant of a 1997 Ford Expedition bearing California license plate 4ZAW857 (the "Vehicle").

15.    As the Vehicle passed through the pre-primary inspection area, a Customs and Border Protection Officer ("CBPO") noticed the Vehicle's spare tire looked clean despite muddy roads from rains the earlier that day; the CBPO also used a density buster on the spare tire, which showed high readings, indicating potential objects in the spare tire. A Narcotics/Human Detection Dog in pre-primary inspection also alerted to the spare tire. The Vehicle was sent to secondary inspection.

16.    In the secondary inspection area, a Z-portal X-ray revealed anomalies in the passenger quarter panel and spare tire. Upon further inspection, 69 packages were found in the rear quarter panels and spare tire of the Vehicle; 67 packages, weighing approximately 33.38 kilograms, tested positive for properties of methamphetamine, and 2 packages, weighing approximately 2.22 kilograms, tested positive for properties of cocaine. Defendant was placed under arrest.

17.    Officers seized the Target Device incident to Defendant's arrest, and Defendant referred to the Target Device as his own multiple times during his post-*Miranda* interview.[1] After being advised of and waiving his rights under *Miranda*, Defendant stated he met a man named Manuel Ruiz one month prior. Defendant stated that Ruiz owned the

---

[1]    On January 15, 2019, HSI agents manually reviewed the contents of the Target Device pursuant to border search authority and based on Defendant's express consent, but were unable to forensically download the Target Device at the time. Nothing from the January 15, 2019 manual review is offered to support probable cause in this application.

I also declare that nothing from the prior search of the Target Device informs my decision to submit this affidavit to obtain a search warrant for the Target Device. I seek this affidavit independent of any information that was seen or reviewed (or not seen) in prior searches.

1 | Vehicle, registered it in Defendant's name, and gave the Vehicle to Defendant to begin
2 | working for him. Defendant stated his job was to drive people around the local area.
3 | Defendant later stated his job was to cross the border from Tijuana to the Burger King near
4 | the San Ysidro border and wait at the Burger King parking lot approximately 20-25
5 | minutes. Defendant stated he did not leave his Vehicle while waiting at the Burger King.

6 |     18.    Defendant stated that Ruiz was the only other person with access to the
7 | Vehicle. Ruiz would take the Vehicle on weekends to rent out tables and chairs, and would
8 | return the Vehicle to Defendant on Sunday nights. Defendant was arrested on a Tuesday
9 | evening. Defendant stated Ruiz took the Vehicle the proceeding Friday night and returned
10 | the Vehicle to him the Sunday at midnight.

11 |     19.    Defendant stated that he would contact Ruiz by phone every single day.
12 | Defendant stated that these contacts with Ruiz—including, specifically, texts—are in the
13 | Target Device.

14 |     20.    Defendant further stated that Ruiz owned the truck prior to Defendant working
15 | for him. Defendant indicated that the truck was registered in somebody else's name when
16 | he began working for Ruiz. Defendant could not recall the name but said he took a picture
17 | of something showing the name, which is in the Target Device.

18 |     21.    In denying knowledge of the narcotics in the Vehicle, Defendant stated that
19 | agents should check the Target Device because he has all the messages of what he had
20 | done, which is why he has not erased them.

21 |     22.    At the time of arrest, Defendant was in possession of a California Vehicle
22 | registration card, with an issue date of September 15, 2018. While Defendant claimed to
23 | be the registered owner of the Vehicle, based on my training and experience, the font on
24 | his California Vehicle registration card appears larger than government-issued registration
25 | cards. I subsequently contacted the California Department of Motor Vehicles, which
26 | confirmed that the Vehicle's last registration expired in 2017 after it was purchased by
27 | Mexican company.

28 | //

1      23.    On January 16, 2019, a complaint was filed charging Defendant with
2 Importation of Methamphetamine and Cocaine in violation of Title 21, United States Code,
3 Sections 952 and 960. On February 13, 2019, Defendant was charged by Indictment with
4 two counts of violating Title 21, United States Code, Sections 952 and 960, in the Southern
5 District of California in case number 19-CR-0527-DMS.

6      24.    As part of my investigation, I reviewed the Defendant's and the Vehicle's
7 crossing histories. I compared Defendant's and the Vehicle's crossing histories and
8 determined that Defendant first crossed the Vehicle into the United States on or about
9 November 30, 2018.

10      25.    Based upon my experience and investigation in this case, I believe that the
11 Defendant, as well as other persons, were involved in an ongoing conspiracy to import
12 methamphetamine, cocaine, or some other federally controlled substance into the United
13 States. Based on my experience investigating narcotics smugglers, I also believe that
14 Defendant may have used the Target Device to coordinate with co-conspirators regarding the
15 importation of methamphetamine, cocaine, or some other federally controlled substance into
16 the United States.

17      26.    Accordingly, based upon my experience and training, consultation with other
18 law enforcement officers experienced in narcotics trafficking investigations, and all the
19 facts and opinions set forth in this affidavit, I believe that information relevant to the
20 narcotics trafficking activities of Defendant, such as telephone numbers, made and received
21 calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages,
22 pictures, audio files, videos, and other digital information are stored in the memory of the
23 **Target Device**.

24      27.    Drug trafficking conspiracies require intricate planning and coordination. This
25 often occurs days, weeks, or even months prior to the actual importation of the drugs into
26 the United States. Co-conspirators communicate with one another in efforts to ensure
27 success in transporting their valuable cargo to its destination within the United States.
28 Given this, I request permission to search the Target Device for items listed in Attachment

1  B beginning on September 1, 2018, up to and including January 15, 2019. That date range
2  is based on: (1) Defendant's alleged California Vehicle registration card states it was issued
3  on September 15, 2018, and Defendant would have been in communication with Ruiz in
4  advance thereof; (2) Defendant first crossed the Vehicle on November 30, 2018; and (3)
5  Defendant's statement that he met the man who gave him the Vehicle, Manuel Ruiz,
6  approximately one month before his arrest.

7                                      **METHODOLOGY**

8        28.    It is not possible to determine, merely by knowing the cellular/mobile
9  telephone's make, model and serial number, the nature and types of services to which the
10  device is subscribed and the nature of the data stored on the device. Cellular/mobile devices
11  today can be simple cellular telephones and text message devices, can include cameras, can
12  serve as personal digital assistants and have functions such as calendars and full address
13  books and can be mini-computers allowing for electronic mail services, web services and
14  rudimentary word processing. An increasing number of cellular/mobile service providers
15  now allow for their subscribers to access their device over the internet and remotely destroy
16  all of the data contained on the device. For that reason, the device may only be powered in
17  a secure environment or, if possible, started in "airplane mode" which disables access to
18  the network. Unlike typical computers, many cellular/mobile telephones do not have hard
19  drives or hard drive equivalents and store information in volatile memory within the device
20  or in memory cards inserted into the device. Current technology provides some solutions
21  for acquiring some of the data stored in some cellular/mobile telephone models using
22  forensic hardware and software. Even if some of the stored information on the device may
23  be acquired forensically, not all of the data subject to seizure may be so acquired. For
24  devices that are not subject to forensic data acquisition or that have potentially relevant
25  data stored that is not subject to such acquisition, the examiner must inspect the device
26  manually and record the process and the results using digital photography. This process is
27  time and labor intensive and may take weeks or longer.

28

                                           9

1    29. Following the issuance of this warrant, I will collect the subject
2  cellular/mobile telephone and subject it to analysis. All forensic analysis of the data
3  contained within the telephone and memory card will employ search protocols directed
4  exclusively to the identification and extraction of data within the scope of this warrant.

5    30. Based on the foregoing, identifying and extracting data subject to seizure
6  pursuant to this warrant may require a range of data analysis techniques, including manual
7  review, and, consequently, may take weeks or months. The personnel conducting the
8  identification and extraction of data will complete the analysis within ninety (90) days,
9  absent further application to this court.

10                           **CONCLUSION**

11    31. Based on all of the facts and circumstances described above, there is probable
12  cause to conclude that Defendant used the **Target Device** to facilitate violations of Title
13  21, United States Code, Sections 952 and 960.

14    32. Because the **Target Device** was promptly seized during the investigation of
15  Defendant trafficking activities and have been securely stored, there is probable cause to
16  believe that evidence of illegal activities committed by Defendant continues to exist on the
17  **Target Device**.

18  //
19  //
20  //
21  //
22  //
23  //
24  //
25  //
26  //
27  //
28  //

1       33.     WHEREFORE, I request that the court issue a warrant authorizing law

2 enforcement agents and/or other federal and state law enforcement officers to search the

3 item described in Attachment A and the seizure of items listed in Attachment B, using the

4 methodology described above.

5

6 I swear the foregoing is true and correct to the best of my knowledge and belief.

7

8



9                    Matthew Dempsey
HSI Special Agent

10

11 Subscribed and sworn to before me this ___2 6___ day of ~~February~~ March, 2019.

12

13

14

15 _____

16 Hon. Bernard G. Skomal
United States Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27

28